# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-KA-01034-SCT

*JAMES V. WHITE a/k/a JAMES VONELL WHITE*

*v.*

*STATE OF MISSISSIPPI*

## ON MOTION FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | 5/4/2000 |
| TRIAL JUDGE: | HON. BOBBY BURT DELAUGHTER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | ROBERT M. RYAN |
| | THOMAS M. FORTNER |
| | LARRY NEAL McMURTRY |
| | CHARLES R. SALTZMAN |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: |
| | JEAN SMITH VAUGHAN |
| DISTRICT ATTORNEY: | EDWARD J. PETERS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED-04/10/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**SMITH, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     The motion for rehearing is granted.  The previous opinions of this Court are withdrawn, and this opinion is substituted therefor.

¶2.     James V. White appeals to this Court from the Circuit Court of Hinds County where he was convicted of Count II, possession of more than one ounce of marijuana with the intent to distribute, but found not guilty of Count I, sale of more than one ounce of marijuana. White raises three issues.  First, he challenges the validity of the search of his apartment.  Second, he contends that the trial court improperly

denied his request for a limiting instruction as to statements regarding his prior bad acts. Finally, he contends that the trial court erred in refusing to give lesser-included offense instructions to the jury. We note the issue of telephonic search warrants as an issue of first impression, and we reject such search warrants. This is a subject for the Legislature as such searches are primarily creatures of statute. However, we adopt the good faith exception recognized in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed. 2d 677 (1984), and find the officers acted reasonably. Finding no reversible error, we affirm the judgment of the trial court.

## FACTS

¶3.     Jeremy Stevens and Brandon Wigley were suspected of dealing marijuana. On January 28, 1998, the Warren County Sheriff's Department set up a "sting" operation in which undercover officer Tim Williams attempted to buy $40 of marijuana from Stevens. Stevens offered to find some marijuana for Williams if he would front him $40. Stevens was given $40 to make the buy.

¶4.     Wigley picked up Stevens, and after an unsuccessful trip to Delta, Louisiana, the pair headed to Hinds County. The Hinds County Sheriff was called, and arrangements were made for Hinds County officials to assist the Warren County investigators in the undercover operation. Stevens and Wigley arrived in Clinton and proceeded to White's apartment where they bought marijuana. Later Wigley's car was pulled over, and the two were arrested at the Hinds/Warren County line.

¶5.     Both the White residence and Wigley's car were placed under surveillance after the buy took place. The officers watching White's apartment grew concerned that he might be tipped off as a result of Stevens's and Wigley's arrests. Detective Jeff Crevitt testified that some friends of Jeremy's at Jeremy's trailer were "expecting Stevens and Wigley to return to Warren County." Hinds County Judge Chet Henley was contacted by Officer Larry Iles by telephone, and an "oral/telephonic search warrant" was

2

procured for the White residence. A search of the apartment yielded marijuana, pagers, cell phones, bank statements, a Crown Royal bag, a gun and the $40 given to Stevens to make the buy. White was taken into custody.

## DISCUSSION

I. **WHETHER THE TRIAL COURT ERRED IN FAILING TO SUPPRESS THE FRUITS OF A SEARCH CONDUCTED BY LAW OFFICERS PURSUANT TO A TELEPHONIC SEARCH WARRANT AS SAID SEARCH WAS THE SAME AS A WARRANTLESS SEARCH AND VIOLATED THE RELEVANT PROVISIONS OF THE UNITED STATES AND MISSISSIPPI CONSTITUTIONS.**

¶6.     White contends that the trial court erred in denying his motion in limine to exclude the fruits of what he alleges was an illegal search. It is true that the officers did not have a paper warrant when they searched White's apartment. They had, however, received approval of the search from a county judge resulting from a phone call by one of the officers to the judge.

¶7.     While not statutorily provided for in Mississippi, telephonic search warrants could possibly act as a buffer against warrantless searches which often undermine Fourth Amendment protections. In the trial court's ruling as to the reasonableness of the search, the judge stated his belief that this Court would prefer "a finding of probable cause by a neutral and detached magistrate telephonically" in a situation where the only other alternative would be a warrantless search. While this may be true, there are other problems with this procedure which warrants a detailed examination and discussion by this Court. If exigent circumstances existed so as to preclude obtaining a proper search warrant, as long as the officers were in good faith in their request and followed other procedural safeguards, evidence found as a result of the issuance of a "telephonic search warrant" would be admissible at trial. However, nothing under current Mississippi law provides for this type of search warrant.

3

¶8.     White argues that to uphold the "telephonic search warrant" would be a violation of the Fourth Amendment of the United States Constitution and Article 3, Section 23 of the Mississippi Constitution. Though Rule 41 of the Federal Rules of Criminal Procedure sets out procedures to obtain a "telephonic search warrant," we have no such rule, and our state constitution says nothing about such warrants. White also submits that in the absence of a specific statute, telephonic search warrants are contrary to the applicable law of Mississippi and that the search of his apartment should be treated as a warrantless search.

¶9.     It is for this Court as the final interpreter of Mississippi's Constitution to determine the legality of this type of search. *Penick v. State*, 440 So. 2d 547, 551 (Miss. 1983). This Court finds that the search was a warrantless search, as Mississippi has yet to recognize the viability of telephonic warrants. In *Boyd v. State*, 206 Miss. 573, 40 So. 2d 303 (1949), we reversed a conviction based on the illegality of a warrant. There the officer had signed the affidavit at his office, and a judge in another county signed off on the warrant. The officer never appeared before the judge, and thus the warrant was illegally obtained. We note that the process of appearing before the judge is important in Mississippi. The current status of our law requires the affiant's and the affidavit's presence before the issuing magistrate before a search warrant may properly issue. *See* Miss. Code Ann. § 41-29-157(a)(2) (2001). The form of an affidavit for a search warrant also indicates the presence of the affiant at issuance. *See* Miss. Code Ann. § 99-25-15 (2000). Thus, by requiring a sworn affidavit before issuance of a warrant, we insure the affidavit is free from facts which might be discovered later and included in a subsequently filed affidavit to support the finding of probable cause. *Whiteley v. Warden*, 401 U.S. 560, 91 S. Ct. 1031, 28 L. Ed. 2d 306 (1971).

4

¶10.    In the case sub judice, no recording was made of the phone call in which this search warrant was authorized, and no paper copy of the search warrant existed at the time of the search.  There does exist a document made under oath in this record which resembles a search warrant affidavit, executed by the narcotics officer the day after this search.  Also in the record is a warrant bearing the judge's signature which also was executed the day afterwards.

¶11.    The several states that have accepted  telephonic warrants require specific procedures most of which were not met here.  The Federal Rules of Criminal Procedure allow for such warrants, and map out a procedure complying with constitutional mandates.  *See* Fed. R. Crim. P. 41.  Such a process should certainly be allowed considering the changing times and advancements in technology.  Further, more than one-third of the States have expressly adopted such warrants by statute, court rule or case law.  *See generally* Ala. R. Crim. P. 3.8(b); Alaska Stat. §§  12.35.010 and 12.35.015 (1991); Ariz. Rev. Stat. § 13-3914 (1999); Cal. Penal Code  § 1526 (1998); Idaho Code § 19-4404 (1994); Ind. Code § 35-33-5-8 (1998); Iowa Code § 321J.10 (1998); § 462A.14D (2000) (However, these two code sections allow for telephonic warrants in cases where an officer is demanding blood or urine specimens from those suspected of driving or operating a boat while under the influence.  Iowa does not authorize telephonic search warrants in general cases.  *See* Iowa Code § 808.3 (1998)); Kan. Stat. Ann. § 22-2502 (1995); La. Code Crim. Proc. Ann. art 162.1 (1999); Mich. Comp. Laws Ann. § 780.651 (1998); Minn. R. Crim. P. 36.08; ***State v. Andries***, 297 N.W. 2d 124 (Minn. 1980); Mont. Code Ann. § 46-5-221 (1991); Neb. Rev. Stat. §§  29-814.03 & 29-814.05 (2001); Nev. Rev. Stat. 179.045(2) (1997); N.J. Rules of Court 3:5-3; N.Y. Crim. Pro. Law §§  690.35 & 690.36 (1998); N.C. Gen. Stat  Ann. § 15A-244, 245 (2001) (*See* Criminal Code Commission Commentary); N.D. R. Crim. P. 41(c)(2); Or. Rev. Stat.

§ 133.545(5) (1999); S.D. Codified Laws § 23a-35-5 (2001); Utah Code Ann. § 77-23-204(2) (1998); Wash. Sup. Ct. Crim. R. 2.3 (c); Wis. Stat. Ann. § 968.12(3) (1998).

¶12.    Nonetheless, that is not the current state of the law in Mississippi. We note that in our sister states telephonic search warrants are primarily a creature of statute. Where they have been accepted in the ordinary course of police investigation, certain specific safeguards exist in these jurisdictions to insure authenticity and proper issuance upon the finding of probable cause. Typical of these safeguards are the requirements: (l) that the entire telephone conversation be recorded; (2) that the officer seeking the warrant is placed under oath by the impartial magistrate while the officer relates the facts supporting a finding of probable cause; and (3) that a paper copy is prepared and provided to the premises owner-either by means of facsimile machine or by requiring the magistrate to read aloud word-for-word the contents of the search warrant he or she has authorized for copying by the officer executing the warrant. *See generally* ABA Criminal Justice Section, *Guidelines for the Issuance of Search Warrants* 73-76 (1990). Telephonic search warrants are constitutionally infirm absent the existence of procedural safeguards and compliance with them. *See **United States v. Richardson***, 943 F.2d 547, 549 (5th Cir. 1991). Thus, we find that the search here was a warrantless search.

¶13.    We decline to accept telephonic search warrants as valid. We hold that it is for the Legislature to create a statutory procedure for telephonic search warrants providing a constitutionally sound method to procure such a search warrant to properly issue using existing procedure. Here, we conclude that the telephonic search warrant is merely one action of the officer to be examined by this Court as to whether the officers acted reasonably under the circumstances then existing.

¶14.    Nonetheless, while the search was a warrantless search, it is possible that a warrantless search can be found reasonable. The United States Supreme Court has found that the Fourth Amendment

6

exclusionary rule should not be applied to bar the use in the prosecution's case-in-chief of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be invalid. *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Mississippi has yet to determine whether such a "good faith" exception applies under its own law. In *Leon*, the Court held:

> [W]here the officer's conduct is objectively reasonable, 'excluding the evidence will not further the ends of the exclusionary rule in any appreciable way; for it is painfully apparent that...the officer is acting as a reasonable officer would and should act in similar circumstances. Excluding the evidence can in no way affect his future conduct unless it is to make him less willing to do his duty.

*Id*. at 919-20 (quoting *Stone v. Powell*, 428 U.S.465, 539-40, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976)

(White, J., dissenting).

¶15.     The proper application of the good faith exception to the Fourth Amendment exclusionary rule was reiterated by the Fifth Circuit:

> The [U.S. Supreme] Court has stated that the exclusionary rule should not be applied to suppress evidence if the evidence was obtained by officers acting in objectively reasonable reliance on a subsequently invalidated search warrant. However, this good faith exception does not apply if: (1) in issuing the warrant the magistrate is misled by information in the affidavit that the affiant knows is false or would have known was false except for his reckless disregard of the truth; (2) the issuing magistrate wholly abandons his judicial role; (3) the warrant is based on an affidavit so lacking in indicia of probable cause that official belief in its existence is entirely unreasonable; or, (4) the warrant is so facially deficient in failing to particularize the place to be searched and things to be seized that the executing officers cannot reasonably presume it to be valid.

*United States v. Russell*, 960 F.2d 421, 423 (5th Cir. 1992) (citations omitted) (applying good faith exception where warrant was procedurally defective); *see United States v. Leon*, 468 U.S. 897, 922-23, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984) (adopting good faith exception to Fourth Amendment exclusionary rule).

¶16.   In the present case, the officers had obtained warrants via telephone from another judge on previous occasions, leading them to mistakenly believe that this procedure was valid. As we have stated above, it is not. However, since the officers in this case did not have the benefit of this opinion, we find that they acted in good faith in obtaining their procedurally defective warrant. *Cf. **State v. Spivey***, 675 So. 2d 1335, 1339 (Ala. Crim. App. 1994) (applying good faith exception where judge telephonically expanded scope of warrant).

¶17.   Because we find in reviewing the record that the police officers believed in good faith that their telephonic warrant was valid, we find that the good faith exception to the exclusionary rule is applicable in this case. None of the enumerated-above restrictions on its application is present on the facts before us.

¶18.   We note that a majority of this Court obliquely avoided an opportunity to adopt this exception sixteen years ago. ***Stringer v. State***, 491 So. 2d 837, 840 (Miss. 1986). In a concurring opinion joined by two other justices, Justice Robertson criticized the majority for not specifically addressing ***Leon***, and argued that this Court was not obligated to follow ***Leon*** by either the federal Constitution or our state constitution. ***Id.*** at 841, 846-50 (Robertson, J., concurring). While it remains true that we are not obliged to adopt the good faith exception, we find that the legal and policy arguments favoring its adoption (as enunciated in ***Leon***) are persuasive. Moreover, the majority's refusal to rely on ***Leon*** in ***Stringer*** is not a precedential force against our adopting ***Leon*** today, since the ***Stringer*** Court had an alternative ground available by which to affirm the trial court's admission of evidence. No such alternative is available in the present case. Further, by merely alluding to ***Leon*** without so much as naming it or its holding, the ***Stringer*** majority clearly chose not to close the door on ***Leon***, as Justice Robertson's concurrence urged it to do.

¶19.    We find that the conclusions these officers made in the field with limited time and information to be reasonable under the circumstances.  The officers were attempting to prevent the destruction of evidence instead of effectuating arrest and seizure.  We conclude that the officers reasonably believed in good faith they had a valid telephonic search warrant and were acting reasonably.  Therefore, we find that *Leon* is applicable.

¶20.    Today, we adopt the *Leon* good faith exception to warrantless searches and further find that it applies to the case at bar.  The officer stated that a district attorney had informed them in police procedures training that such warrants were permissible under appropriate circumstances.  Further, the officer stated that he had obtained such a warrant on one or two prior occasions.  Beyond that, the oral statement was given under oath to a neutral magistrate.  More importantly, the following morning, the officer filled out a written warrant and record of the telephone conversation and presented it to the authorizing judge. Thus, a follow up procedure utilizing some, though admittedly not all, of the generally recognized safeguards was used here.  Instead of immediately entering the apartment and conducting a warrantless search, these officers "did their duty" by pursuing a more careful, prudent course.  Thus, the officers had a reasonable good faith belief that they were executing a valid warrant, and  the exclusionary rule should not operate in this case.

¶21.    The *Leon* Court did enumerate four circumstances under which any officer should know better than to proceed on a warrant, no matter what the magistrate tells him:

> Suppression therefore remains an appropriate remedy if **[1]** the  magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth.  The exception we recognize today will also not apply in cases where **[2]** the issuing magistrate wholly abandoned his judicial role in the manner condemned in *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 99 S. Ct. 2319, 60 L. Ed. 2d 920 (1979); in such circumstances, no reasonably well trained officer should rely on the warrant. Nor would an officer manifest

objective good faith in relying on **[3]** a warrant based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Finally, depending on the circumstances of the particular case, **[4]** a warrant may be so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid.

468 U.S. at 923 (citations omitted & boldfaced numerals added). None of these exceptions goes to a purely formal issue like whether the warrant was issued on paper or via telephone, fax, or e-mail. The exclusionary rule does not achieve its purpose when evidence is barred, and criminals go free, merely "because the form of the warrant was improper in some respect." ***Id.*** at 915-17. Only when the exclusionary rule can have some meaningful effect is it to be applied:

> Suppressing evidence obtained pursuant to a technically defective warrant supported by probable cause also might encourage officers to scrutinize more closely the form of the warrant and to point out suspected judicial errors. We find such arguments speculative and conclude that suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule.

***Id.*** at 918.

¶22.   In a companion case to ***Leon***, the Court even more emphatically held that a technical deficiency should not trigger the exclusionary rule: "we refuse to rule that an officer is required to disbelieve a judge who has just advised him, by word and by action, that the warrant he possesses authorizes him to conduct the search he has requested." ***Massachusetts v. Sheppard***, 468 U.S. 981, 989-90, 104 S. Ct. 3424, 82 L. Ed. 2d 727 (1984). The Court went on to state:

> An error of constitutional dimensions may have been committed with respect to the issuance of the warrant, but it was the judge, not the police officers, who made the critical mistake. "[T]he exclusionary rule was adopted to deter unlawful searches by police, not to punish the errors of magistrates and judges."

***Id.*** at 990 (quoting ***Illinois v. Gates***, 462 U.S. 213, 263, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983)).

¶23.    Noting the deference allowed to the trial court, and the situation presented below, we find that the search was reasonable under the *Leon* good faith exception. The trial court, even in the absence of a state statute regarding telephonic search warrants, properly upheld the search as a reasonable warrantless search. Thus, the trial court is affirmed.

**II.    WHETHER THE TRIAL COURT ERRED IN DENYING A MOTION IN LIMINE REGARDING PRIOR BAD ACTS OF DEFENDANT AND IN DENYING THE DEFENSE A CAUTIONARY JURY INSTRUCTION IN THAT REGARD.**

¶24.    The admissibility of evidence related to prior acts is governed, partially, by Rule 404(b) of the Mississippi Rules of Evidence. The reason for the rule is to prevent the State from raising the inference that the accused has committed other crimes and is therefore likely to be guilty of the offense charged. *Lancaster v. State*, 472 So.2d 363, 367-68 (Miss.1985); *Davis v. State*, 377 So.2d 1076 (Miss.1979).

¶25.    There are exceptions, however. Evidence of a prior offense is admissible if offered, not to show the accused's criminal tendencies, but to prove identity, knowledge, intent, common criminal scheme or plan, or absence of mistake. *Robinson v. State*, 497 So.2d 440, 442 (Miss.1986). We have held that evidence of prior acts offered to show intent to distribute is not barred by M.R.E. 404(b) and is properly admissible if it withstands scrutiny under M.R.E. 403 and is accompanied by a proper limiting instruction. *Swington v. State*, 742 So.2d 1106, 1111 (Miss. 1999); *Smith v. State*, 656 So.2d 95, 100 (Miss. 1995); *Holland v. State*, 656 So.2d 1192, 1196 (Miss. 1995).

¶26.    The ultimate resolution of this issue depends on the purpose for which the evidence was offered. White's previous misdemeanor conviction for possession of marijuana and Stevens's and Wigley's accounts of previous sales of marijuana by White are not admissible "to show that he acted in conformity therewith."

11

M.R.E. 404(b). The State contends that the statements in the officer's report were offered "to establish whether the defendant had the requisite intent to distribute or sell marijuana." The suggestion is that if he intended to distribute before, he intended to distribute this time. The distinction is that while the prior act is not accepted as evidence of the entire crime, it is accepted as evidence of a constituent element of the crime. In prior opinions, we have followed the general trend and held that previous involvement with drugs can be admitted on the issue of intent to distribute. *See Swington v. State*, 742 So. 2d at 1111; *Smith v. State*, 656 So. 2d at 100; *Jowers v. State,* 593 So. 2d 46, 47 (Miss.1992). Given the difficulty of proving subjective intent, we see no reason to categorically exclude evidence of prior sales. The trial court did not err in denying White's motion in limine regarding the exclusion of statements discussing prior bad acts.

¶27. Even when other-crimes evidence is admissible under M.R.E. 404(b), it must pass through the "ultimate filter" of M.R.E. 403. *Jenkins v. State,* 507 So.2d 89, 93 (Miss.1987). Furthermore, the jury must be informed as to the limited purpose for which they are allowed to consider the other-crimes evidence. This cannot be accomplished if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." In *Smith*, the defendant argued that it was error for the trial court not to grant a cautionary instruction, sua sponte. We agreed and held that "wherever 404(b) evidence is offered and there is an objection which is overruled, the objection shall be deemed an invocation of the right to M.R.E. 403 balancing analysis and a limiting instruction." 656 So.2d at 100. *See also Bounds v. State*, 688 So.2d 1362, 1371-72 (Miss. 1997).

¶28. In the case at bar, White argues that the trial court erred in denying his request for an instruction as to the limited purposes for which the other-crimes evidence could be considered. While it is true that

12

the trial court denied the defense's proffered limiting instruction, he did not fail to give one. Court instruction

C-6 clearly states:

> The Court instructs the jury that, as to Count 2, evidence of alleged sales of marijuana, either on the date in question *or on previous occasions*, are offered in an effort to show motive, opportunity, intent, plan, and/or preparation regarding the defendant James White. In other words, if you find beyond a reasonable doubt that the defendant possessed marijuana on the date alleged, then you may consider any evidence of alleged marijuana sales in determining whether the defendant possessed the marijuana with the intent to distribute or sell it, giving such evidence whatever weight, worth, and credibility, if any you think it deserves for that purpose.
>
> Further, if you find the defendant guilty of the sale alleged in Count 1, you may consider that sale as possible evidence of guilty knowledge by the defendant of the nature and presence of any marijuana that he is charged with possessing in count 2.
>
> You are not, however, under any circumstances, to consider any evidence of alleged prior marijuana sales in reaching a verdict as to Count 1, or for any other purpose not specifically authorized by this instruction.

(emphasis added).

¶29. The instruction requested by defense (D-9) states:

> Ladies and gentlemen of the jury you have heard evidence concerning the defendant's alleged involvement in drug related activities. The Court instructs you that the evidence was offered in an effort to show motive, opportunity, intent, and preparation, regarding the defendant James White. You may give this testimony such weight and credibility as you deem proper under the circumstances. However, you can not and must not consider this testimony in any way regarding whether or not James White is guilty or not guilty of the charge for which he is presently on trial.

The instruction given by the court was very similar to that submitted by the defense, and perfectly adequate under the dictates of this Court's case law. Thus, there was no error in admitting the evidence of prior bad acts, and the jury was properly instructed as to the limits on their consideration of such acts. This allegation of error is without merit.

### III. WHETHER THE TRIAL COURT ERRED IN DENYING LESSER-INCLUDED OFFENSE INSTRUCTIONS.

¶30.    A defendant is entitled to have jury instructions given which present his theory of the case. *Smith v. State*, 802 So.2d 82, 88 (Miss. 2001) (collecting authorities). This principle of law is not boundless, as the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence. *Id*. Jury instructions should be given only when evidence in the case being tried supports them. *Walker v. State*, 740 So.2d 873, 888 (Miss. 1999). This Court has found that a lesser-included offense instruction is authorized if a rational or reasonable jury could find the defendant not guilty of the principal offense in the indictment, but guilty of the lesser-included offense. *Pleasant v. State*, 701 So.2d 799, 804 (Miss. 1997). White was found guilty of possession of more than one ounce of marijuana with the intent to distribute. He alleges error in that the jury was not given an instruction on the lesser-included offense of simple possession. We find that there is no foundation in the evidence which would mandate such an instruction.

¶31.    In order to prove possession, the State must prove that White had dominion and control over the marijuana found in his apartment. *Jackson v. State*, 689 So.2d 760, 767 (Miss. 1997); *Berry v. State*, 652 So.2d 745, 748 (Miss. 1995); *Campbell v. State*, 566 So.2d 475, 477 (Miss. 1990). White admitted that he had purchased approximately two ounces of marijuana at his apartment on the night of his arrest and that he shared some with his friends. We find that this conclusively shows dominion and control. Thus, the possession portion of the offense is clearly met.

¶32. The more difficult question is whether based upon the evidence presented a reasonable jury could have found White guilty of possession, as opposed to possession with intent to distribute. White's assertion at trial was that he did not intend to distribute the marijuana within his possession, rather he intended only to share a "smoke sack" with two of his friends. This is similar to the argument recently presented to and dismissed by this Court in *Meek v. State*, 806 So.2d 236 (Miss. 2001) . In *Meek*, the defendant argued that "his actions did not constitute a transfer because he did not intend to place the contraband in commerce nor intend to distribute the substance for economic gain." *Id*. at 239. This Court has equated the general terms "transfer" and "deliver." *Evans v. State*, 460 So.2d 824, 828 (Miss. 1984). In *Meek*, we noted that distributing "includes transactions which are sales as well as transactions which may not be considered sales." *Meek*, 806 So. 2d at 239-40; *Rogers v. State*, 599 So.2d 930, 934 (Miss. 1992). The intent of the delivery and transfer of narcotics statute is "to thwart the exchange or transfer of the substance whether accompanied by consideration or not." *Id.*; *Wilkins v. State*, 273 So.2d 177 (Miss. 1973).

¶33. This Court has held that it is not necessary for the transferor to make a profit or that there be consideration for the transaction to constitute a transfer or distribution under the statute. *Rogers v. State*, 599 So.2d 930 (Miss. 1992); *Turner v. State*, 573 So.2d 1340 (Miss. 1990); *Minor v. State*, 482 So.2d 1107 (Miss. 1986); *Boone v. State*, 291 So.2d 182, 184 (Miss. 1974). Further, as we stated in *Meek*:

> A transfer is a change of possession from one person to another. *See Commonwealth v. McCue*, 338 Pa.Super. 117, 487 A.2d 880, 883 (1985). Also, a transfer is any act by which the holder of an object delivers it to another with the intent of passing whatever rights he has in the latter. *See United States v. Nutter*, 13 M.J. 803, 803-04 (A.F.C.M.R.1981)....We find that the only intent necessary is an intent to relinquish possession and control. The intent of the recipient is immaterial. All that is required is that Meek, the transferor, have knowledge of the character and presence of the controlled

15

substance and that he intentionally transfer it to another with the intent to part with possession and control.

*Meek v. State*, 806 So.2d at 240.  Here, the evidence put on by White on his own behalf clearly meets the definition of possession with intent to distribute.  We find that White was not entitled to a jury instruction on lesser-included offenses; and therefore, the trial judge did not err in denying his request.  This issue is similarly without merit.

## **CONCLUSION**

¶34.    This Court cautions that today's finding of a good faith *Leon* exception in this particular case and finding that the officers acted reasonably is no recognition of the validity of telephonic search warrants.  To the contrary, we reject such a notion.  The subject of telephonic search warrants is for the Legislature to address.  We are sending a clear message that such warrants are not valid, such that from this day on, no officer or judge will be able to claim ignorance of the clearly-stated law in this respect.  In this particular instance before us, however, where the officers and the judge did not have the benefit of this opinion's guidance, we affirm the trial court's determination that the officers demonstrated their good faith belief that they were adhering to the letter of the Fourth Amendment.

¶35.    In conclusion, we admonish all law enforcement officers and prosecutors to understand that our adoption today of the *Leon* "good faith" exception should not be interpreted, in any way, as an opportunity for them to be less diligent or less thorough in following the mandates of the United States Constitution, the Mississippi Constitution, or case law interpretations thereof, regarding search and seizure.  Here, the officers' use of a telephonic search warrant merely aids and reenforces the reasonableness of their actions in this case.

16

¶36.    In adopting the *Leon*, good faith exception we note what the Supreme Court stated:

> In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause....The affidavit related the results of an extensive investigation and, as the opinions of the divided panel of the Court of Appeals make clear, provided evidence sufficient to create disagreement among thoughtful and competent judges as to the existence of probable cause.  Under these circumstances, the officers' reliance on the magistrate's determination of probable cause was objectively reasonable, and application of the extreme sanction of exclusion is inappropriate.

468 U.S. at 926.

¶37.    We find no error in admitting evidence of prior bad acts, nor do we find error in the denial of a

lesser-included offense instruction.  We, therefore, affirm the trial court's judgment.

¶38.    **CONVICTION OF POSSESSION OF MARIJUANA IN AN AMOUNT OF MORE THAN ONE (1) OUNCE WITH INTENT TO DISTRIBUTE AND SENTENCE OF NINE ( 9) YEARS, SIX (6) YEARS SUPERVISED PROBATION WITH NINE (9) YEARS TO SERVE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.  APPELLANT SHALL RECEIVE CREDIT FOR TIME SERVED AND SHALL REIMBURSE HINDS COUNTY FOR ATTORNEY FEES AT THE RATE OF $35 PER MONTH TO BEGIN 60 DAYS AFTER RELEASE.**

**PITTMAN, C.J., WALLER, COBB, DIAZ, EASLEY AND CARLSON, JJ., CONCUR.  GRAVES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. McRAE, P.J., NOT PARTICIPATING.**

17