966 So.2d 894 (2007)
Patrick Douglas DENHAM, Appellant
v.
STATE of Mississippi, Appellee.
No. 2006-KA-00725-COA.
Court of Appeals of Mississippi.
October 16, 2007.
*895 Leslie S. Lee, attorney for appellant.
Office of the Attorney General by Ladonna C. Holland, attorney for appellee.
Before KING, C.J., GRIFFIS and BARNES, JJ.
GRIFFIS, J., for the Court.
¶ 1. On November 17, 2005, Patrick Douglas Denham was convicted in the Circuit Court of Forrest County of burglary of a dwelling. On appeal, he argues that the trial court erred when it: (1) failed to exclude evidence of fingerprint comparison and results, (2) failed to exclude evidence of other crimes, (3) allowed an eyewitness to make an in-court identification, and (4) refused a jury instruction on inconsistent testimony. We find no error and affirm.

FACTS
¶ 2. On March 3, 2005, Nelson Peden went to lunch in Hattiesburg with his wife and mother-in-law, Shelia Mathis. After lunch, Peden decided to opt out of a planned shopping excursion and went to Mathis's house to take a nap.
¶ 3. When he arrived at her house, Peden started to enter the house but instead decided to smoke a cigarette outside. While smoking, he saw a man fleeing the house to a car parked in the rear of the house. The car began to drive past Peden through the yard to the street at the front of the house. As the car passed him, Peden hurried to his vehicle. Peden pursued the vehicle for about two miles. At one point during the pursuit, the other car turned around and tried to run Peden off the road. After that, Peden lost sight of the vehicle and returned back to Mathis's house. At some point during the chase, Peden called his wife and told her to call 911 because her mother's house had been burglarized.
¶ 4. Upon returning, Peden gave an initial statement to Hattiesburg Police Officer Robert Teck. Within two hours, Peden arrived at the police station where he was asked to identify the man in the car from a *896 five person photo lineup. He positively identified Denham as the man in the car. While at the station, he also gave Detective Wilson a written statement.
¶ 5. Meanwhile, Investigator Denise Ruple, a crime scene investigator for the Hattiesburg Police Department, was called to Mathis's house to process the crime scene. During the course of her duties, she dusted the house for fingerprints. She found several fingerprints, including prints just inside the utility room window. The prints Ruple found were processed by the Mississippi Crime Laboratory. Paul Wilkerson, an expert fingerprint examiner, testified at trial and identified the print from inside the utility room window as belonging to Denham.
¶ 6. On November 16, 2005, the jury convicted Denham of burglary of a dwelling. He was sentenced as an habitual offender to serve twenty-five years in the custody of the Mississippi Department of Corrections. Aggrieved by the conviction, Denham appeals and raises the following issues.

ANALYSIS
I. Whether the trial court erred when it failed to exclude evidence of fingerprint comparison and results.
¶ 7. Denham claims the trial court erred in denying his motion in limine to exclude evidence of fingerprint comparison and their results. On November 15, 2005, the day before the trial, Denham's counsel filed a motion to prohibit the introduction of any evidence of the fingerprint comparisons done in this case. Denham argued that the State only produced one examiner, Paul Wilkerson, when, according to the guidelines set forth in the Scientific Working Group on Friction Ridge Analysis, Study and Testing (SWGFAST), the testimony of two examiners is necessary for a valid identification. Hence, Denham claims that the State's failure to produce the other examiner, Jamie Bush, violated Denham's Sixth Amendment right to confrontation. Prior to trial on November 16, the trial judge allowed argument on the motion and then denied the motion. The judge ruled that the failure to have both examiners present was a matter for cross-examination.
¶ 8. The standard of review for the admission or suppression of evidence is abuse of discretion. Haggerty v. Foster, 838 So.2d 948(¶ 25) (Miss.2002). The admission of expert testimony is within the sound discretion of the trial judge. Puckett v. State, 737 So.2d 322(¶ 57) (Miss. 1999). However, the Sixth Amendment to the United States Constitution and Article Three, sections 14 and 26 of the Mississippi Constitution provide the accused with the right to confront those who testify against him. Denham claims the trial judge committed reversible error for admitting the testimony of Wilkerson and not requiring the State to also offer the testimony of Jamie Bush.
¶ 9. At trial, Ruple testified that she dusted a window for fingerprints which she believed to be the burglar's point of entry. She transferred the prints onto a fingerprint card which was delivered to the Mississippi Crime Lab. Separately, Detective Jeff Byrd took Denham's palm prints and fingerprints, which were also sent to the crime lab to be compared to the fingerprints found at the crime scene.
¶ 10. Paul Wilkerson, a latent fingerprint examiner at the Mississippi Crime Lab, was tendered as an expert in fingerprint identification with no objection. Wilkerson was asked to describe the procedure that the crime lab followed when prints were received. After he described the procedure, the following exchange occurred:

*897 Q. The procedure that you just described, is that generally accepted in the realm of the scientific community, being forensic fingerprint lift of identification?
A. Yes, it is. That's used in just about every scientific endeavor is those steps, whether it be forensics or not.
Q. Well, in this case was there in fact a second examiner? I think you indicated earlier that usually there are two guys that's going to look at the same thing. Did that happen in this case?
A. Yes, it did. Actually, I was the verifier in this case but Jamie Bush did the initial examinations, and I did the verification.
Q. We don't know who Jamie Bush is. Is he also someone employed by the Mississippi Crime Laboratory in that department?
A. Yes. Actually, he's my boss. He's the section chief for the latent print section. He is a certified latent print examiner. He's at the Mississippi Crime Laboratory in Meridian.
Thereafter, Wilkerson testified that he reviewed Jamie Bush's report and compared the fingerprints found at the crime scene with Denham's known fingerprints. Wilkerson then offered this conclusion:
Q. Based on your examination of the known print card and the latent lift from the inside window of the utility room, which one of those three conclusions did you reach, sir?
A. L1, which was the inside of the window, was made by the left middle fingerprint of Patrick Denham to the exclusion of everybody else in the world.
¶ 11. Denham argues that he had a constitutional right to cross-examine the other expert who identified his print. Denham claims that Bush's opinion was clearly testimonial under Crawford v. Washington, 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Hence, Denham urges this Court to grant him a new trial so that he may properly confront all the witnesses against him. Bell v. State, 928 So.2d 951, 960-61 (¶¶ 36-38) (Miss.Ct.App.2005).
¶ 12. Indeed, Denham has a constitutional right to be confronted with the witnesses who testify against him. U.S. Const. amend. VI; Miss. Const. of 1890, art. 3, § 26. This right applies to in-court testimony as well as testimonial hearsay, unless the witness is unavailable and the defendant had a prior opportunity to cross-examine him. Rubenstein v. State, 941 So.2d 735, 754(¶ 46) (Miss.2006) (citing Crawford v. Washington, 541 U.S. 36, 53-54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004)). "[T]he purpose of the Confrontation Clause is `to advance the accuracy of the truth determining process . . . by assuring that the trier of fact has a satisfactory basis for evaluating the trust of a prior statement.'" Id. (quoting Lanier v. State, 533 So.2d 473, 488 (Miss.1988)). In Rubenstein, the Mississippi Supreme Court held that the Confrontation Clause does not apply to non-testimonial hearsay. Rubenstein, 941 So.2d at 754(¶ 47).
¶ 13. There was no testimony or evidence from Bush. The jury heard only that Bush performed the initial fingerprint examination at the crime lab. Bush's report was neither admitted into evidence nor were his findings ever presented to the jury. Accordingly, we find no merit to this issue.
II. Whether the trial court erred when it failed to exclude evidence of other crimes.
¶ 14. Denham next argues that the trial court abused its discretion when it *898 allowed evidence of other crimes. More specifically, Denham challenges the admission of several photographs taken of him by Detective Nick Calico on a date prior to the burglary. Denham claims that the evidence unduly prejudiced him and should have been excluded under Mississippi Rule of Evidence 403 and Rule 404(b).
¶ 15. Denham argued that drivers are not stopped by police and photographed for no reason. The jury was thus aware that Denham was suspected of some crime for police officers to want to photograph him, his car, and his shoes. Detective Calico stopped Denham in early March of 2005. Calico testified that Denham was not engaged in any illegal conduct and was not ticketed on that day. Calico also testified he took pictures of Denham. At the hearing on the motion in limine, Denham's counsel argued:
This burglary happened on March 3, 2005. Two days prior to this incident my client was stopped in Palmer's Crossing with two other individuals in a green Buick vehicle. And the officers, as a result of their ongoing investigation separate from this case, took photographs of my client and the other individuals in the car, their shoes, and the vehicles. It's believed that the State will intend to offer this into evidence in this case. We would state that this has no relevance whatsoever. It's extremely prejudicial to my client. And furthermore, it would affect my cross-examination. There would be no way that I could cross-examine the officer that's going to testify about this information without having to get into the fact that there were other burglaries involved that he may have been implicated in. . . .
The trial judge ruled that "officers are allowed to testify as to how they develop suspects and everything else as long as they don't bring in other bad acts that are going to  so I'm going to allow the testimony in that regard."
¶ 16. Denham claims error by the trial judge because no on-the-record balancing test was conducted by the court, as required by Rule 403. In addition, Denham claims that the admission of the photographs and the testimony of Detective Calico was clearly prejudicial and tended to show evidence of other crimes, prior bad acts, and bad character of the appellant in violation of Rule 404(b). Hence, Denham argues that his rights to due process and a fair trial were violated.
¶ 17. The State counters by arguing that the Forrest County Sheriff's Department considered Denham a possible suspect in other burglaries the department was investigating. During the investigation of these burglaries, Sheriff's Deputy Nick Calico pulled Denham over and photographed him as well as his vehicle. As part of his decision, the trial judge determined that Calico would not reference the fact Denham was a possible suspect in other burglaries. In fact, Calico's trial testimony revealed only that he had previously encountered Denham and had the opportunity to photograph him and his vehicle. The photo of Denham's vehicle was entered into evidence. Peden identified Denham's vehicle, depicted in the photo, as the vehicle in which Denham fled the crime scene.
¶ 18. The admissibility of evidence of other crimes or bad acts committed by the defendant is governed by Rule 404(b). White v. State, 842 So.2d 565, 573(¶ 24) (Miss.2003). "The reason for the rule is to prevent the State from raising the inference that the accused has committed other crimes and is therefore likely to be guilty of the offense charged." Id. Rule 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of *899 unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Rule 404(b) provides:
Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
¶ 19. We find no unfair prejudice in Calico's testimony. Likewise, we find that Calico's testimony did not raise any evidence of Denham's other crimes or bad acts. Calico testified that during his encounter with Denham he was not engaged in any illegal conduct. Accordingly, we find no merit to this issue.
III. Whether the trial court erred when it allowed an eyewitness to make an in-court identification.
¶ 20. Denham argues that Peden's testimony was tainted by the unduly suggestive out of court identification he made on the day of the crime. Within two hours of the burglary, Peden was asked to view a photographic line-up at the police station. Peden positively identified Denham, and he stated that he was one-hundred percent sure about his identification. The line-up included photographs of five individuals of the same race and sex. There is no indication that any improper emphasis was placed on any of the photographs. During the trial, Peden identified Denham as the man he chased from Mathis' home.
¶ 21. "Pretrial photograph identifications have been generally upheld if the witnesses view the photographs separately and if there is no emphasis placed on certain photographs as opposed to others." Isom v. State, 928 So.2d 840, 847(¶ 23) (Miss.2006) (quoting Burks v. State, 770 So.2d 960, 963 (Miss.2000)). In Neil v. Biggers, 409 U.S. 188, 199-200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), the United States Supreme Court discussed five factors to be considered in determining whether a lineup is impermissibly suggestive: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. However, for the trial court to consider the Biggers factors, the defendant must assert that the out-of-court identification was impermissibly suggestive. Wilson v. State, 574 So.2d 1324, 1327 (Miss.1990) (citing Jones v. State, 504 So.2d 1196, 1199 (Miss. 1987)). The Biggers factors may then be used "to determine whether the in-court identification is sufficiently reliable to overcome the taint of the prior improperly attained identification." Ellis v. State, 667 So.2d 599, 605 (Miss.1995) (quoting Gayten v. State, 595 So.2d 409, 418 (Miss.1992)).
¶ 22. Here, Denham fails to state any reason or basis to claim why or how the photographic line-up was impermissibly suggestive. Instead, Denham moves directly to a Biggers analysis. Denham's analysis actually tries to attack the credibility of Peden's out-of-court and in-court identifications. This is a jury issue and the Biggers factors do not control this analysis. We find no merit to this issue.
IV. Whether the trial court improperly refused a jury instruction on inconsistent testimony.
¶ 23. Finally, Denham challenges the trial judge's decision to refuse Denham's *900 instruction on inconsistent testimony. Denham offered the following instruction: "You have heard the evidence that Nelson Peden made statements prior to trial that are inconsistent with his testimony at this trial. If you believe inconsistent statements were made by Nelson Peden, you may consider, [sic] the inconsistencies in evaluating the believability of Nelsen [sic] Peden's testimony."
¶ 24. Denham argues that the Mississippi Supreme Court has held that a defendant is entitled to an inconsistent statement instruction where the witness has given a prior inconsistent statement. Ferrill v. State, 643 So.2d 501, 505-06 (Miss. 1994). Conflicts between testimony of a witness and the written statement of a witness would justify such an instruction. In Wright v. State, 797 So.2d 1028, 1030-31 (¶¶ 11-13) (Miss.Ct.App.2001), similar to the case at bar, the trial judge refused an inconsistent statement instruction stating:
Wright had requested the trial court to instruct the jury that, in evaluating the credibility to assign to Deputy Campbell's testimony, it should take into account the fact that he had made statements prior to the trial that were inconsistent with his trial testimony. The court refused the instruction saying that it was "a comment on the testimony of one witness as to one particular part of that one witness's testimony. And for that reason the Court is refusing that instruction."
The alleged inconsistency in Campbell's pre-trial statement arose out of the fact that, in his written report shortly after the incident, Campbell had not mentioned seeing the defendant holding a shiny object while in the store nor had he reported seeing Wright throw such an object into the car before running away on foot.
We agree with Wright's contention that it is not, as the trial court held, an improper comment on the testimony of a witness to instruct the jury regarding the proper effect to give to prior inconsistent statements by witnesses testifying at trial. Such instructions have been approved in a number of prior decisions of the Mississippi Supreme Court. See, e.g., Ferrill v. State, 643 So.2d 501, 505 (Miss.1994); McGee v. State, 608 So.2d 1129, 1135 (Miss.1992).
¶ 25. Denham was entitled to a jury instruction which presents his theory of the case, unless the instruction incorrectly states the law, is fairly covered elsewhere in the instructions, or lacks foundation in the evidence. Phillipson v. State, 943 So.2d 670, 671(¶ 6) (Miss.2006). If the instruction was granted, the trial judge would have concluded and informed the jury that Peden's statements made prior to trial were inconsistent with his trial testimony. We have reviewed Peden's pretrial statement and cannot find where any statements therein were inconsistent with his trial testimony. Accordingly, we find that the trial court was correct in refusing proposed instruction D-2 as having no foundation in the evidence.
¶ 26. THE JUDGMENT OF THE CIRCUIT COURT OF FORREST COUNTY OF CONVICTION OF BURGLARY OF A DWELLING AS AN HABITUAL OFFENDER AND SENTENCE TO SERVE A TERM OF TWENTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT THE POSSIBILITY OF PROBATION, PAROLE, OR EARLY RELEASE IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO FORREST COUNTY.
*901 KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.