UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT

_____

No. 91-1406
_____


UNITED STATES OF AMERICA,
Plaintiff-Appellee,

VERSUS

BOBBY RUSSELL,
Defendant-Appellant.

_____

Appeal from the United States District Court
For the Northern District of Mississippi
_____
(April 28, 1992)

Before JOLLY, JONES and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Defendant Bobby Russell pled guilty to tax fraud and other fraudulent activity. Russell appeals, arguing that the search warrant used to obtain evidence which played an integral part in his conviction was defective and that the good faith exception to warrantless searches does not apply. We disagree, and affirm the district court's orders overruling Russell's motions to suppress this evidence.

**I**

On August 20, 1986, James Baker--a special agent with the IRS criminal investigation division--applied for a search warrant to the United States District Court for the Northern District of Mississippi. The application sought permission to search Russell's

office[1] and home because he was suspected of tax fraud.[2]  The Magistrate Judge found probable cause and issued a search warrant.[3]

The search warrant was executed on Russell's residence and place of business the next day.  The warrant served on Russell and the warrant in the Magistrate Judge's files, however, failed to include the second attachment describing the items to be seized.[4] During the search, however, Baker posted a copy of the list of

---

[1]  Russell was the sole proprietor of BHR Publishing in Tupelo, Mississippi.  In his capacity as proprietor of BHR, Russell published newspapers, magazines, and calendars, and conducted country music shows for different organizations.

[2]  On April 19, 1990, a federal grand jury in the Northern District of Mississippi returned a 226-count Indictment against Russell and his coconspirator, Beverly Bedford.  The Indictment alleges various instances of tax fraud, including fraudulent deductions and fraudulent use of IRS Form W-2.

[3]  Baker's application for a search warrant was accompanied by a thirteen-page affidavit.  Part I of the affidavit described Baker's qualifications and the crimes which Russell allegedly committed.  Part II set forth the underlying facts and circumstances which provided probable cause for the issuance of the search warrant.  Part III of the affidavit listed the items to be seized during the search.

[4]  The warrant, as issued by the Magistrate Judge, was to include two attachments.  The first attachment was to describe the premises to be searched, and the second attachment was to describe the items to be seized.  These attachments were used because the warrant form had insufficient space.  Where the property to be seized was supposed to be listed, the search warrant read "(See attached)" (A copy of Part III of the affidavit from the application and affidavit for search warrant, see *supra* note 3, was supposed to be attached).  This second attachment, describing the property to be seized, was omitted from the search warrant.  The cause of this defect in the search warrant is unknown. Neither the Magistrate Judge nor Baker could clearly ascertain how the second attachment was omitted from the search warrant.  The Magistrate Judge's staff was apparently responsible for compiling the attachments from the affidavit and assembling the warrant.  The district court's finding that Baker acted in good faith (*see infra* note 6) suggests that Baker was not responsible for this oversight. *See also infra* note 10.

items to be seized, and made a computerized inventory of each item actually seized from Russell's house and office. When the search was completed, Baker served Russell with a copy of the warrant and a copy of the inventory of the items seized. At trial, Russell moved to suppress the evidence seized on the ground that the warrant--which did not include a list of items to be seized during the search--was fatally defective. The district court denied Russell's motion and held that the evidence should not be suppressed.[5] Russell appeals.[6]

---

[5] *See Russell v. United States*, 649 F. Supp. 1402 (N.D. Miss. 1986).

[6] Prior to his appeal, the district court reconsidered the suppression issue in light of the affidavit of Bill Gibson, a special agent with the Internal Revenue Service. Gibson alleged that on the night of August 20, 1986--the day before the warrant was executed--he met with Baker, who had applied for the warrant to search Russell's house and office. Gibson allegedly told Baker that the warrant did not contain a list of items authorized to be seized. The district court considered Gibson's testimony, and entered an opinion overruling Russell's supplemental motion to suppress. In its order, the district court stated that there was nothing in the record, including the affidavit of Gibson, to indicate that Baker sought the warrant in anything other than good faith.

On appeal, Russell reasserts that Gibson's affidavit indicates a lack of good faith on Baker's part. As we have noted *infra* note 10, the facts show that Baker understood that the search and seizure was limited to the premises and items listed in the affidavit, and that the scope of the intended search and seizure was not exceeded. Therefore, we do not agree with Russell that Baker either wilfully served a warrant he knew to be defective or that he was ignorant of the Constitution. Moreover, the district court's fact findings regarding Bakers' good faith--findings supported by the record (*see infra* note 10)--are not clearly erroneous.

Russell contends that the evidence seized should have been suppressed because the search warrant--missing the attachment listing and describing the items to be seized (*see supra* notes 3-4)--was defective and because the warrant was not obtained and executed in good faith. Our review of the objective reasonableness of an officer's reliance on a search warrant is a question of law reviewable de novo, and the underlying facts upon which that determination is based is reviewed for clear error. *See United States v. Maggitt*, 778 F.2d 1029, 1035 (5th Cir. 1985), *cert. denied*, 476 U.S. 1184, 106 S. Ct. 2920 (1986); *United States v. Tedford*, 875 F.2d 446, 448 (5th Cir. 1989) (citations omitted) (this court accepts facts underlying the trial court's finding of good faith unless clearly erroneous; the court's ultimate determination that officers acted in good faith is a conclusion of law subject to de novo review).

The Fourth Amendment to the Constitution states that warrants shall particularly describe the place to be searched, and the person or things to be seized. Rule 41(c) of the Federal Rules of Criminal Procedure states that a warrant shall identify the property or person to be seized and name or describe the person or place to be searched. *See* Fed. R. Crim. P. 41(c). In their briefs, the parties do not disagree that, because the warrant in this case did not include a list of the items to be seized as is required by the Fourth Amendment and Rule 41(c) of the Federal Rules of Criminal Procedure, the warrant was defective. Therefore,

we will only determine whether the good faith exception to the exclusionary rule applies.

The purpose of the exclusionary rule is to deter police misconduct. *See United States v. Leon*, 468 U.S. 897, 916, 104 S. Ct. 3405, 3417 (1984). The Court has stated that the exclusionary rule should not be applied to suppress evidence if the evidence was obtained by officers acting in objectively reasonable reliance on a subsequently invalidated search warrant. *See id.* at 922-23, 104 S. Ct. at 3420; *Massachusetts v. Sheppard*, 468 U.S. 981, 987-88, 104 S. Ct. 3424, 3427 (1984) (citation omitted). However, this good faith exception does not apply if: (1) in issuing the warrant the magistrate is misled by information in the affidavit that the affiant knows is false or would have known was false except for his reckless disregard of the truth; (2) the issuing magistrate wholly abandons his judicial role; (3) the warrant is based on an affidavit so lacking in indicia of probable cause that official belief in its existence is entirely unreasonable; or, (4) the warrant is so facially deficient in failing to particularize the place to be searched and things to be seized that the executing officers cannot reasonably presume it to be valid. *See Leon*, 468 U.S. at 923, 104 S. Ct. at 3421 (citations omitted).

The Government refers us to *Massachusetts v. Sheppard*, 468 U.S. 981, 104 S. Ct. 3424 (1984), where the Court discussed a situation somewhat similar to that in this case. In *Sheppard*, the Court affirmed the execution of a warrant that authorized a search for "controlled substances," but was actually meant to enable a

-5-

search for evidence of a murder. The judge attempted to modify the warrant, but failed to incorporate an affidavit stating the items to be searched for. *Id.* at 986-87, 104 S. Ct. at 3426-27. In holding that the evidence was properly admitted notwithstanding the defect in the warrant, the Court stated that the police conduct was objectively reasonable and largely error free, and that it was the judge, and not the police officers, who made the critical mistake. *Id.* at 990-91, 104 S. Ct. at 3429; *see also United States v. Anderson*, 851 F.2d 384, 388-89 (D.C. Cir. 1988), *cert. denied*, 488 U.S. 1012, 109 S. Ct. 801 (1989) (discussing *Sheppard*). In *Sheppard*, the Court noted that suppressing evidence because the judge failed to make all the necessary clerical corrections, despite his assurance that such changes would be made, would not serve the deterrent function that the exclusionary rule was designed to achieve. *See Sheppard*, 468 U.S. at 990-91, 104 S. Ct. at 3429. In this case, we likewise see nothing to be gained by laying fault for this apparent clerical error at Baker's feet.[7]

Russell's arguments primarily focus on the objective reasonableness of Baker in relying on the defective warrant. He argues that Baker did not do all that could be reasonably expected to rectify the defective warrant. According to Russell, Baker knew about the missing list of items to be seized because another agent had pointed it out to him the night before the search.[8] Russell contends that, when Baker spoke to the Magistrate Judge on the

---

[7] *See supra* note 4.

[8] *See supra* note 6.

morning of the search, Baker should have asked about the missing list of items.[9]  We find these arguments unpersuasive.

As the Government notes, the evidence indicates that the warrant--defective because of clerical error--was executed in good faith.[10]  As the Court noted in *Sheppard*, the exclusionary rule was

_____

[9]  Russell also argues that Baker's misunderstanding about the necessity for the list to be attached to the warrant does not justify the application of the good faith exception.  He asserts that the warrant was so defective that a reasonably well-trained agent could not have been expected to rely on the warrant.  Likewise, Russell contends that the search grossly exceeded the scope of the probable cause affidavit.

[10]  Baker prepared and presented an application for a search warrant which was supported by an affidavit that demonstrated probable cause and set forth the place to be searched and the items to be seized.  Specifically, the direct examination of the Magistrate Judge reveals the following exchange:

> Q.  During the course of the hearing concerning this warrant, what did you considering in issuing the warrant?
> A. . . .  I read the affidavit prepared by the special agent and executed before me . . .  I looked at the description of the property.  I look at the itemized list of things to be seized.  I read and studied the facts, the underlying facts of probable cause.  And based on looking at the description, I then looked at the search warrant and I signed it, after considering all of the things stated in the affidavit.
> Q.  Did you make a finding of probable cause?
> A.  I did make a finding of probable cause.  And I looked at the search warrant and signed it.

Record on Appeal, vol. II at 13, *United States of America v. Bobby Russell*, No. 91-1406 (5th Cir. filed Apr. 16, 1991) ["Record on Appeal"] (direct examination of Magistrate Judge):

The record establishes that the search warrant signed by the Magistrate Judge contained an attachment identifying the place to be searched, but did not have the list of items to be seized.  *See* Record on Appeal (Government's Exhibit #2: copy of search warrant that was signed and executed by Magistrate Judge on August 20, 1986).  Neither Baker nor the Magistrate Judge realized that the list of items to be seized contained in the affidavit was not attached to the warrant as finally assembled, as is supported by the following testimony:

> Q.  Now, at the time you signed the warrant, were you aware that the things to be seized were inadvertently omitted from the - -

-7-

A. I was not at that time. I was not aware of that, at that time, that that has been omitted from the search warrant.

Q. Had you known that, would you have signed the warrant?

A. I would have seen to it that it would have been attached before I signed it.

* * *

Q. Do you have any idea of what happened to the list that should have been attached to the warrant?

A. I cannot recall.

* * *

A. So I went back in my file, when you filed your motion, and I did not have a copy of those items attached to my copy of the search warrant. I do recall seeing those items listed in the affidavit.

Record on Appeal at 15, 17, 23 (direct and cross examination of Magistrate Judge); *id.* at 63 (cross examination of Baker):

Q. Well, you understood that you had a copy of the whole warrant, didn't you?

A. Actually, I later learned during the execution when I handed him the return that in fact the attachment was not on there. But I didn't question the fact that the attachment for items to be seized was not on the warrant. And the reason I didn't question it was because of a fairly unusual event, at least in my experience with warrants is concerned, at the time I was handed the document to be served on Mr. Russell, at my request, prior to going to the Magistrate's Office, Mr. Dawson asked the Magistrate if he would seal the file. The file included necessarily the affidavit. Because Item 3 of the affidavit was in fact the item 2 attachment to the warrant. When I handed Mr. Russell the file, even though I noticed it wasn't on there, I assumed it was omitted by the Magistrate because it didn't have to be attached.

Q. You assumed that when you left the Magistrate's office?

A. No. I didn't even know it wasn't on there. I didn't think about it, whether it was or wasn't. I never looked at the file. I never looked at the document given to me by the Magistrate at all until 9:50 pm on the 21st of August when I gave it to Mr. Russell.

There is also an abundance of other testimony in the record to suggest that the Magistrate Judge and Baker were aware of the warrant's limitations and acted accordingly:

-- The facts indicate that the Magistrate Judge and Baker understood that the search and seizure was limited to the premises listed and the list of items contained in the affidavit:

-8-

Q. Now, Magistrate Gillespie, through the process you've talked about issuing this particular warrant, what was your understanding about the searching and seizing authority of Special Agent Baker?:

A. That under the warrant that he had the authority to search the property described in the search warrant and seize the items listed therein.

Q. Would that list be identical to the list attached to the affidavit?

A. That's right.

Record on Appeal at 17 (direct examination of Magistrate Judge); *id.* at 53 (direct examination of Baker):

Q. Now, what did you believe was your authority to search with respect to the place to be searched?

A. I was convinced that my authority to search the premises . . . was limited solely to the items listed in the affidavit that I filed with the Magistrate under oath and only Section 3 items subject to being seized.

-- The facts show that, on the morning of the search, Baker called the Magistrate Judge to add an item that had been omitted from the affidavit's list:

Q. Did you call the Magistrate?

A. Yes. I was specifically concerned about adding the item to the warrant. I knew that I could not add the item to the warrant or search for it if in fact I did not have the approval of the Magistrate.

* * *

A. At approximately 10:06 am I called the Magistrate. At which time I informed the Magistrate that due to what appeared to be a typing error in the attachment of items to be searched to the affidavit, which included the warrant . . . there was omitted an item I for Equipment or Devices used to prepare any document or record described herein. And I have the original, a copy of the original document that I wrote on . . . which is the third page of this document, states "Added 10:06 am, 8-21-86 A.P.P. telephone Magistrate Gillespie."

*Id.* at 45 (direct examination of Baker).

-- In addition, the subsequent seizure of items from Russell's home and business was limited to the items from

the list in the affidavit:

> Q. Now, these five agents, you said had the authority to search and therefore given a copy of the items to be seized?
>
> A. That's correct. They were the only persons.
>
> Q. Who was the only person who had authority to make the judgment to seize an item?
>
> A. I was the only person on the entire search team that was authorized physically to make a decision to seize any item.
>
> Q. Now, did you have a backup for that decision?
>
> A. Yes, I did. I had a [protective] device, as I thought of it at the time, in that I had another agent checking my decision regarding the applicability of the item to be seized against the items listed in the inventory.
>
> Q. Who was that?
>
> A. Special Agent Ransig. And I gave him the original copy of the items to be seized section, which I had in my possession, and I put his name at the top of that document, which he kept in his possession the entire time the search was executed.
>
> Q. Did Mr. Ransig also have any additional duties during the search with respect to making a return?
>
> A. Yes, he did. The reason that I had him postured to double check any decision I made was because his primary duty was not to search but inventory on a computer terminal, which we set up on the premises of Mr. Russell's business, all of items that were subject to being seized.
>
> Q. What advantage did that give to you in the course to the owner of the premises?
>
> A. It insured that only the items subject to seizure were in fact being seized.
>
> Q. What about making an immediate return computer printout?
>
> A. That was primarily the reason that we use the computer in the first place was so that we could lend a much more accurate, complete and quicker return after execution of the search.

*Id.* at 47-48 (direct examination of Baker).

-- Baker also posted a copy of the list of items to be seized on the wall of Russell's office:

> A. The particular one, [copy of items to be

-10-

adopted to deter unlawful searches by police, not to punish the clerical errors of magistrates and judges. *See Massachusetts v. Sheppard*, 468 U.S. 981, 990, 104 S. Ct. 3424, 3429 (1984) (citation omitted).[11]     Accordingly, we find that the *Leon* good faith

> seized] which I have is a copy of, was actually posted on the wall in the room described as Room 1 on the drawing of the premises diagram of the floor plan right next to the computer, right across, I would say within six or seven feet of Mr. Russell's desk.
> *Id.* at 48-49 (direct examination of Baker).
>
> **--** And finally, Baker orally advised Russell of the items to be seized when he first arrived and then left Russell a computerized listing of the items to be seized:
> Q. Now, was a copy of the warrant left with Mr. Russell?
> A. Yes, it was. Everything I was given by the Magistrate to serve on Mr. Russell was given to Mr. Russell. And, in addition, this computerized list of the return.
> Q. So the copy of the warrant, as issued by the Magistrate, was served on Mr. Russell?
> A. Yes.
> Q. And, in addition, the computerized printout of things that had actually been seized was left with Mr. Russell?
> A. That's correct.
> Q. Now, in addition to that, did you orally advise Mr. Russell of the things that were going to be seized?
> A. Yes.
> *Id.* at 49 (direct examination of Baker).

[11] *See also United States v. Anderson*, 851 F.2d 384, 388-89 (D.C. Cir. 1988). In *Anderson*, an affidavit prepared in support of a state search warrant specified in detail the items to be seized, but the affidavit was not attached to or incorporated by the warrant. In holding that the investigating officers had an objectively reasonable basis for their mistaken belief that their search of a motel room was authorized by a valid warrant, the D.C. Circuit noted that: (1) the investigating officers presented the affidavit to a neutral judge along with an affidavit submitted earlier in support of a federal warrant, (2) the search was executed by the same officers who had prepared the affidavits, and (3) the scope of the search was limited to the items listed in the

exception applies, and we affirm the district court's orders overruling Russell's motions to suppress.

### III

For the foregoing reasons, we AFFIRM.

---

affidavits. *Id.*

Similarly, in *United States v. Maxwell*, 920 F.2d 1028, 1034 (D.C. Cir. 1990), the agent who applied for a search warrant prepared an affidavit detailing the illegalities of which the defendant was suspected and presented it to a neutral and detached magistrate. The magistrate determined that probable cause existed to search the defendant's apartment, but neglected to incorporate the agent's affidavit into the warrant. *Id.* The D.C. Circuit noted that, when the magistrate signed the warrant at issue with the affidavit apparently attached although not specifically incorporated into the search warrant, the agent could have reasonably concluded that the scope of the warrant was limited to materials supporting the allegations contained in the affidavit. *Id.* The court also noted that the same agent who prepared the affidavit and obtained the warrant also oversaw the execution of the warrant. *Id.* Thus, the court held that the agents took every step that could reasonably be expected of them, and that a reasonable police officer would have concluded that the warrant authorized a search for the materials outlined in the affidavit. *Id.* (citations omitted).