MAXWELL, J.,
for the Court:
¶ 1. Jay Magee challenges the admission of DNA evidence at his trial for armed robbery and kidnapping. We reject his claim that the search warrant, relied on to collect a DNA swab from his mouth, only authorized a search of his jail cell and not him personally. And even if it were true that the search warrant was invalid to search Magee, we find the DNA evidence, tying him to a ski mask discovered in the woods near the crime scene, admissible under the good-faith exception to the exclusionary rule.
¶ 2. We also find the testimony of the handler of a tracking dog used to find evidence admissible based on the dog’s and handler’s training, and the verdict is not against the weight of the evidence. We therefore affirm.
FACTS
113. This case concerns the January 2, 2009 armed robbery of Sonic Drive-In in Poplarville, Mississippi. Just after closing, two armed black males, with their faces masked, approached an employee taking out the trash and forced her at gunpoint to let them into the store. After directing all employees into the cooler, the two men *1186 stole the cash drawer and a green Bank Plus deposit bag full of cash.
¶ 4. Approximately an hour before the robbery, Ricky Graham, who lived seventy-five yards away from the restaurant, called the Poplarville Police Department about a suspicious silver truck parked in front of his house. Graham told the police he had seen two black males leave the truck on foot. A responding officer found the silver truck unlocked with the keys in the ignition. He removed the keys, locked the truck, and asked Graham to call him if anyone returned for the vehicle.
¶ 5. Graham called back fifteen minutes after the robbery. He reported that the two men had returned and, finding the truck locked, fled on foot. The Poplarville Police Department also received reports of two black males running through the woods near Graham’s house.
¶ 6. Another officer, while working the Sonic crime scene, responded to a call that a man, wearing only underwear and tennis shoes, was stranded at a carwash fifty yards away. The scantily clad African American male, identified as Jay Magee, claimed he had been jumped by two men. Magee insisted the men dragged him into the woods, took his clothes, and then fled. Magee claimed he then flagged down the driver of a car on the edge of town, who dropped Magee off at the caiwash. This officer later testified that, as a wrecker towing the silver truck passed by, he heard Magee say, “That’s my truck.”
¶ 7. Officers impounded the truck, obtained a search warrant, and processed the vehicle for evidence. Police found a green Bank Plus bag with “Sonic” written in black marker and a .9 mm handgun on the back seat. They also found a Walmart employee ID with Magee’s photo and the name “Jay.”
¶ 8. A deputy with the sheriffs department, Gary Lumpkin, trained in K-9 detection, used his German Shepherd, Nix, to track a scent from the silver truck to a nearby wooded area. There, officers found clothing, including a ski mask, and cash. Deputy Lumpkin’s dog then followed a scent from the place Magee claimed he had been picked up to the same wooded area where the clothing, mask, and cash were discovered.
¶ 9. In the early hours of January 3, officers placed Magee under arrest. That same day the sheriffs department found Magee’s accomplice, Palanstea Williams, riding a bicycle on Highway 11 and also placed him under arrest.
¶ 10. A similar armed robbery had occurred at a Sonic in Picayune, Mississippi, five weeks earlier. Picayune officer Blaine Heath had recovered a red baseball cap in the woods near the Picayune crime scene. Hearing of the Poplarville arrests, Officer Heath interviewed Magee and Williams at the Poplarville Jail. After the interviews, Officer Heath obtained search warrants to collect Magee’s and Williams’s DNA. He then returned to the jail and met with Magee in an interrogation room. Officer Heath told Magee he had a search warrant for his DNA. Magee appeared eager to prove the red baseball cap found in Picayune was not his and, according to Officer Heath, did not object to providing a DNA sample. Officer Heath also took a sample from Williams. Williams’s sample linked him to the cap found in Picayune. Ma-gee’s sample connected him to the ski mask found in the woods in Poplarville near where Magee had been picked up.
¶ 11. A Pearl River County grand jury returned a four-count indictment charging Magee and Williams with armed robbery and kidnapping stemming from the Poplar- *1187 ville and Picayune Sonic robberies. Williams pled guilty prior to trial.[1]
¶ 12. Magee moved to suppress the DNA evidence. He challenged the search warrant, arguing it authorized only the search of a place — the Picayune Jail — and not his person. The circuit court denied Magee’s motion. The circuit judge did, however, sever the two counts relating to the Picayune robbery. And trial commenced solely on the armed robbery and kidnapping counts connected with the Pop-larville case.
¶ 13. The jury found Magee guilty of both counts. After an unsuccessful post-trial motion, Magee timely appealed.
DISCUSSION
¶ 14. Magee raises three challenges on appeal: (1) the DNA evidence should have been excluded because it was obtained by an invalid search warrant; (2) the K-9 officer’s testimony about tracking Magee’s scent was unreliable and, therefore, inadmissible; and (3) the jury’s verdict is against the weight of the evidence.
I. DNA Evidence
¶ 15. The Fourth Amendment protects individuals against unjustified and improper intrusions. U.S. Const. Amend. IV. See Daniel v. State, 536 So.2d 1319, 1321-22 (Miss.1988). An intrusion into the human body for testing, such as taking a DNA swab, is a search and seizure protected by the Fourth Amendment. Daniel, 536 So.2d at 1322 (citing Schmerber v. California, 384 U.S. 757, 770, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966)). Absent an emergency, a search warrant was required to take Magee’s mouth swab. Id, The Fourth Amendment directs that “no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.” U.S. Const. Amend. IV.
¶ 16. On appeal, Magee limits his attack on the search warrant to his claim that the DNA collected from him should have been excluded because the warrant only authorized a search of the jail and not his person.[2] The circuit court based its decision to admit the DNA on two exceptions to the warrant requirement — (1) the good-faith exception to the exclusionary rule and (2) consent. Either of which, if proper, serve as a sufficient basis for admission. As to the consent finding, it appears Magee consented only after being advised of the search warrant. And the United States Supreme Court has held there can be no consent after the officer conducting the search has asserted he possesses a warrant. Bumper v. North Carolina, 391 U.S. 543, 548, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968); see Brown v. State, 358 So.2d 1004, 1005 (Miss.1978) (holding “consent must be shown to be voluntary ... and not a mere acquiescence to the claim of lawful authority”) (quoting Bumper, 391 U.S. at 548-49, 88 S.Ct. 1788); United States v. Horton, 488 F.2d 374, 380 (5th Cir.1973) (same). So we must decide whether the warrant was sufficient on its face to authorize the collection of Magee’s *1188 DNA. And, if not, whether the DNA was admissible under the good-faith exception.
A. The Sufficiency of the Warrant
¶ 17. The affidavit supporting the warrant is based on a general form utilized by various law-enforcement agencies in Mississippi. It contains existing headings and spaces for the affiant to enter relevant information supporting the requested search warrant. Under place to be searched, Officer Heath gave directions from his location to the Poplarville Jail. In the space for occupier and controller of the place to be searched, Officer Heath inserted “Jay Magee.” When identifying things to be seized, Officer Heath described “D.N.A. in any form collected.” And under facts establishing grounds for issuing a search warrant, Officer Heath typed:
On 11-26-08 ... Sonic Drive In, located at 3301 Hwy 11 North, Picayune, MS, was robbed at gun point by two black males. The black males left behind ... a red St. Louise [sic] Cardinals fitted base ball cap. DNA has been pulled from the hat for matching.
In reference to this case, two black males were arrested and charged with armed robbery of the Sonic Drive In located in Poplarville, M[S]. After I spoke with the suspects, it is believed that these black males, (Jay Magee and Palanstea Williams) have the same M.O., body language, posture, size, and shape as the armed robberies committed in Hammond, LA., Ponchatoula, LA., Sli-dell, LA., Picayune, MS., and Poplar-ville, MS.
I respectfully request to obtain D.N.A. to match to that D.N.A. recovered from the Sonic [r]obbery in Picayune, MS.
The warrant issued by the judge listed the address of the Poplarville Jail as the place to be searched. It identified Magee as controller of the place to be searched and specifically described “D.N.A. in any or all forms that can be collected” as the things to be seized. In denying Magee’s motion to suppress, the circuit judge recognized that Officer Heath had been “saddled with forms ... geared more for or geared totally to search property of premises,” and not “for searches of persons.”
¶ 18. Magee argues the resulting warrant only authorized a search of the area of the jail controlled by Magee — not Magee himself. He relies on the principle that probable cause to search a place cannot be imputed to a person who happens to be located in the same place at the time of the search. Kirkland v. State, 916 So.2d 537, 542 (¶ 17) (Miss.Ct.App.2005) (citing Ybarra v. Illinois, 444 U.S. 85, 91, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979)). But both Kirkland and Ybarra are inapplicable because Officer Heath was not bootstrapping probable cause to search the jail as authority to search Magee, who happened to be in the jail. Rather, the affidavit contains independent, specific probable cause to obtain Magee’s DNA to determine whether his DNA matched the sample from the Picayune crime. From his affidavit, we find it clear that Officer Heath sought a warrant to collect Magee’s DNA, not to search a jail cell.
¶ 19. Thus, we find this particular search warrant’s description specific enough to authorize the collection of Ma-gee’s DNA in any and all forms — which included the mouth swab Officer Heath took. See Hamilton v. State, 556 So.2d 685, 689 (Miss.1990) (finding a search warrant’s description does not have to be “positively specific and definite” to be sufficient).
B. The Good-Faith Exception to the Exclusionary Rule
¶ 20. But we need not dwell on this alleged deficiency. Because even if *1189 the warrant was insufficient on its face, whether to exclude the DNA evidence from Magee’s trial is an entirely separate issue. “The Fourth Amendment contains no provision expressly precluding the use of evidence obtained in violation of its commands,” but the judicially created “exclusionary rule” safeguards the Fourth Amendment by deterring violations. United States v. Leon, 468 U.S. 897, 906, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The purpose of the exclusionary rule is to deter police misconduct. Id. at 916, 104 S.Ct. 3405.
¶ 21. In Leon, the United States Supreme Court held the Fourth Amendment exclusionary rule should not be applied to bar the prosecution from using in its casein-chief evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be invalid. Leon, 468 U.S. at 918-21, 104 S.Ct. 3405; see also Massachusetts v. Sheppard, 468 U.S. 981, 987-89, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984) (holding exclusionary rule did not apply to evidence seized during search that officers reasonably believed was authorized by a warrant later determined to be technically defective).
¶ 22. Mississippi has expressly adopted Leon’s “good-faith exception.” White v. State, 842 So.2d 565, 570-72 (¶¶ 14-20) (Miss.2003). In White, the Mississippi Supreme Court cited with approval the Fifth Circuit’s discussion of the exclusionary rule in United States v. Russell, 960 F.2d 421, 423 (5th Cir.1992). White, 842 So.2d at 571 (¶ 15). The court explained that “the exclusionary rule should not be applied to suppress evidence if the evidence was obtained by officers acting in objectively reasonable reliance on a subsequently invalidated search warrant.” Id. (quoting Russell, 960 F.2d at 423). But the exception to the exclusionary rule does not apply if:
(1) in issuing the warrant the magistrate is misled by information in the affidavit that the affiant knows is false or would have known was false except for his reckless disregard of the truth; (2) the issuing magistrate wholly abandons his judicial role; (3) the warrant is based on an affidavit so lacking in indi-cia of probable cause that official belief in its existence is entirely unreasonable; or, (4) the warrant is so facially deficient in failing to particularize the place to be searched and things to be seized that the executing officers cannot reasonably presume it to be valid.

Id.

¶23. Though we find adequate probable cause existed to search Magee for DNA, this finding is not a prerequisite to applying the good-faith exception. Instead, “the sole issue ... is whether the officerf ] reasonably believed that the search [he] conducted was authorized by a valid warrant.” Sheppard, 468 U.S. at 988, 104 S.Ct. 3424; see also Leon, 468 U.S. at 922, 104 S.Ct. 3405 (emphasizing “the officer’s reliance on the magistrate’s probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable”); Russell, 960 F.2d at 423 (testing for lack of indicia of probable cause, not lack of probable cause, in determining whether exclusionary rule applies).
¶ 24. Typically, the “mere existence of a warrant ... suffices to prove that an officer conducted a search in good faith and justifies application of the good faith exception.” United States v. Hodge, 246 F.3d 301, 308 (3d Cir.2001) (citing Leon, 468 U.S. at 922, 104 S.Ct. 3405); see also United States v. Stearn, 597 F.3d 540, 560-61 (3d. Cir.2010) (“If an officer obtains a warrant and executes it in good faith, *1190 ‘there is no police illegality and thus nothing to deter.’ ”) (quoting Leon, 468 U.S. at 921, 104 S.Ct. 3405). We find it clear from his affidavit that Officer Heath sought a warrant to collect Magee’s DNA. And he believed the warrant authorized him to do so. Thus, we find Officer Heath acted reasonably.
¶ 25. Further, none of the four reasons for rejecting the good-faith exception are applicable. White, 842 So.2d at 571 (¶ 15). There are no allegations that Officer Heath mislead or provided false information to the judge issuing the warrant. And the judge certainly did not abandon his judicial role. The affidavit is not “lacking in indicia of probable cause.” Id. Nor is it “so facially deficient in failing to particularize the place to be searched and the things to be seized” that Officer Heath could not reasonably rely on it to swab Magee’s mouth. Id.
¶ 26. We find that, even if a deficiency existed, excluding the DNA evidence would not further the ends of the exclusionary rule. Id. at 571 (¶ 14). Therefore, the circuit court properly admitted the DNA evidence under the good-faith exception.
II. Canine Evidence
¶ 27. Magee next contests the admission of Detective Lumpkin’s testimony about his trained German Shepherd tracking a scent from both the truck and the car wash to the wooded area where the clothes and mask were found. “The relevancy and admissibility of evidence are largely within the discretion of the trial court and reversal may be had only where that discretion has been abused.” Byrom v. State, 863 So.2d 836, 878 (¶ 150) (Miss.2003) (quoting Parker v. State, 606 So.2d 1132, 1136 (Miss.1992)).
¶ 28. In overruling Magee’s objection to Deputy Lumpkin’s testimony, the circuit court rightly focused on the dog’s qualifications to track scents and Deputy Lump-kin’s training and certification as Nix’s handler. Byrom, 863 So.2d at 879 (¶¶ 155-56) (finding defendant’s argument that tracking dog was not qualified lacked merit because evidence showed the dog was highly qualified and his handler was well-trained and certified); see also Gavin v. State, 891 So.2d 907, 971 (Ala.Crim.App. 2003) (“For dog-tracking evidence to be admissible, the State must establish the following: the training and reliability of the dog, the qualifications of the person handling the dog, and the circumstances surrounding the tracking by the dog.”).
¶ 29. Magee attacks the canine’s reliability based on Deputy Lumpkin’s testimony that he had only used Nix in ten investigations. But Deputy Lumpkin also testified Nix had been trained by the military. And when the sheriffs department purchased Nix, both Nix and Deputy Lumpkin went through a training and certification course. Each month, Deputy Lumpkin and Nix officially train for eight hours. And on his days off, Deputy Lump-kin works with Nix for approximately three hours. Although Nix had only participated in ten actual criminal investigations, Nix regularly tracked during training.
¶ 30. Citing Hinton v. State, 175 Miss. 308, 166 So. 762, 763-64 (1936) and Harris v. State, 143 Miss. 102, 108 So. 446, 446-47 (1926), Magee argues for the first time on appeal that Nix was not qualified because there is no evidence in the record Nix is a purebred. But neither the Mississippi Supreme Court in Byrom nor we in this case find that evidence of pedigree is necessary to prove a tracking dog is qualified. See Byrom, 863 So.2d at 878 (¶¶ 153-54) (distinguishing Hinton and Hams).
*1191 ¶ 31. The circuit court allowed Magee’s counsel to cross-examine Deputy Lumpkin about Nix’s ability to track scents and raise questions before the jury regarding Nix’s reliability. United States v. Boxley, 373 F.3d 759, 762 (6th Cir.2004) (holding, “after it is shown that the dog is certified, all other evidence relating to his accuracy goes only to the credibility of the testimony, not to the dog’s qualifications”). We find, based on the evidence supporting the dog’s and Deputy Lumpkin’s qualifications, the circuit court did not abuse its discretion in permitting Deputy Lumpkin to testify.
III. Weight of the Evidence
¶ 32. Magee finally argues the guilty verdict is not supported by the weight of the evidence. When considering the weight of the evidence, “we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush v. State, 895 So.2d 836, 844 (¶ 18) (Miss.2005). We review the weight of the evidence in the light most favorable to the verdict. Id.
¶ 33. Magee relies on conflicting testimony concerning the number of men who returned to the silver truck, the number of bank bags found in the back seat, and whether the gunmen were wearing bandanas or ski masks. The jury is responsible for resolving conflicts in the testimony. Moore v. State, 969 So.2d 153, 156 (¶ 11) (Miss.Ct.App.2007) (quoting Stephens v. State, 911 So.2d 424, 436 (¶ 38) (Miss.2005)). On review, it is not for us to determine “what testimony the jury believed or disbelieved in arriving at its verdict.” Id.
¶ 34. Magee also argues that, because this is a circumstantial-evidence case, his conviction can only stand if the evidence excluded all reasonable hypotheses consistent with his innocence, relying on Johnson v. State, 999 So.2d 360, 367 (¶ 29) (Miss.2008). Johnson requires is that the jury be instructed to exclude every reasonable hypothesis other than guilt, as they were here. Id. Magee presented his defense theory — that he was mugged by two men and stripped of his clothes, which the jury obviously rejected.
¶ 35. Considering the evidence in the light most favorable to the verdict, it showed two men left Magee’s truck parked in front of Graham’s house an hour before the robbery. Two masked men robbed the Sonic at gunpoint and forced employees into the cooler. The two men then returned to the truck to find it locked, and then they fled into the woods. Police located discarded clothing, including a ski mask, in the woods, and found Magee unclothed at a nearby car wash. Police discovered in the truck a green bank bag with “Sonic” written on it, Magee’s ID, and a pistol. And the police linked the ski mask to Magee’s DNA profile.
¶ 36. The evidence of Magee’s guilt is overwhelming. Therefore, we affirm his armed robbery and kidnapping convictions.
¶ 37. THE JUDGMENT OF THE PEARL RIVER COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, ARMED ROBBERY, AND SENTENCE OF FORTY YEARS, WITH TEN YEARS SUSPENDED, AND COUNT II, KIDNAPPING, AND SENTENCE OF THIRTY YEARS, WITH THE SENTENCES TO RUN CONSECUTIVELY, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO PEARL RIVER COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., MYERS, BARNES, ISHEE, *1192 ROBERTS AND CARLTON, JJ., CONCUR. RUSSELL, J., NOT PARTICIPATING.

. The record before us does not indicate the offense(s) to which Williams pled guilty.

. Magee mentions in his brief that “inconse-quently” the search warrant was not properly returned because the officer’s signature was missing from the inventory page. During the suppression hearing, Officer Heath testified he was the one who made the return. The circuit judge ruled the omission of the signature on the officer’s return did not preclude the application of the good-faith exception. On appeal, Magee does not argue this ruling was error, and we agree with his assessment that this technical deficiency was inconsequential under these facts.