# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-KA-01817-COA

ROBERT ANTHONY MOORE A/K/A ROBERT MOORE A/K/A ROBERT A. MOORE

APPELLANT

v.

STATE OF MISSISSIPPI

APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 12/06/2013 |
| TRIAL JUDGE: | HON. LISA P. DODSON |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES BENJAMIN ALLEN SUBER |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BILLY L. GORE JOHN R. HENRY JR. |
| DISTRICT ATTORNEY: | JOEL SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF COUNT I, SEXUAL BATTERY, AND COUNT II, EXPLOITATION OF A CHILD, AND SENTENCED TO TWENTY YEARS IN COUNT I AND TWENTY YEARS IN COUNT II, BOTH IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH THE SENTENCES TO RUN CONCURRENTLY AND WITH CREDIT FOR TIME SERVED; TO PAY A $1,000 FINE IN COUNT I AND A $50,000 FINE IN COUNT II, WITH BOTH FINES SUSPENDED; TO PAY $1,000 TO THE MISSISSIPPI CHILDREN'S TRUST FUND; AND TO REGISTER AS A SEX OFFENDER |
| DISPOSITION: | AFFIRMED - 04/07/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., BARNES AND MAXWELL, JJ.**

**MAXWELL, J., FOR THE COURT:**

¶1.     Modern cell phones are more than just phones. Because they contain "a broad array of private information," a warrant is generally required before a cell phone may be searched.[1] That is why the officer in this case obtained a warrant for Robert Anthony Moore's cell phone before he seized it, turned it on, and searched through Moore's photographs. These pictures corroborated the minor victim's allegation that Moore had used the phone to photograph his sexual battery of her.

¶2.     Moore tried to suppress the photos, claiming the warrant only authorized the officer to seize his phone, not search its contents. But the facts and circumstances supporting the warrant clearly showed the phone was being seized because it allegedly contained photographs of the crime. Thus, we find the warrant authorized the officer to search the photographs stored on Moore's phone.

¶3.     But even had it not, we find the officer reasonably believed the warrant gave him such authority. Such good-faith reliance makes the exclusionary rule inapplicable. So the circuit judge did not abuse her discretion when she denied Moore's motion to exclude the photographs.

¶4.     Our review shows these photographs, when coupled with the victim's testimony, sufficiently supported Moore's conviction. And the judge did not err when she denied

---

[1] *Riley v. California*, 134 S. Ct. 2473, 2490-95 (2014).

Moore's motion to sever.  We affirm the judgment of conviction.

**Background Facts and Procedural History**

### I.     Sexual Battery

¶5.     Fifteen-year-old Sarah[2] lived with her grandmother.  So did her younger sisters and her "cousin," Moore.[3]  Early morning New Year's Day, while everyone was still asleep—including Sarah's boyfriend who was staying over—Sarah got up to use the restroom.  On her way back to her room, Moore called out to her.  Sarah testified that, when she went into Moore's room, Moore blocked her from leaving and asked her to have sex with him.  Sarah said she tried to leave but Moore physically threatened her.  Moore then asked her to take off her clothes.  Out of fear for herself and her family, she complied.  Moore then asked the naked Sarah to pose herself in various positions so he could take sexually explicit photographs of her.  Moore then sexually battered her, photographing that as well.

### II.     Investigation and Indictment

¶6.     Sarah did not initially tell anyone what happened, especially her boyfriend, who she feared may get hurt if he confronted Moore.  But days later, rumors about the photographs began circulating at school.  Sarah went to the school resource officer and tearfully told her what had happened days earlier.  The school officer contacted the Biloxi Police Department,

---

[2]  Sarah is a fictitious name, used to protect the identity of the victim, who was a minor when the sexual battery occurred.

[3]  Moore is not Sarah's actual cousin but instead was a family friend she referred to as her cousin.

who sent over an investigator to interview Sarah. From this interview, the investigator learned Moore had used a black LG TracFone to photograph the crime.

¶7. The day before, Moore had been arrested for an unrelated charge and was in custody at the Harrison County Jail. Among the items on Moore's person when he was arrested was a black LG phone matching Sarah's description. The investigator obtained a search warrant for the phone, which was located in Moore's property bag at the jail. Included in the underlying facts and circumstances to support the search warrant was Sarah's statement that Moore "photographed her with his cellular phone during the assault." After retrieving the phone, the investigator turned it on and scrolled through the stored pictures, immediately finding the photographs Sarah had described.

¶8. Moore was arrested on April 18, 2012. On June 19, 2012, the investigator obtained a second search warrant—this one expressly authorizing him to search and download any and all electronic data, including photographs, stored on the LG phone.

¶9. Eighteen photographs were pulled from the phone and presented to the grand jury. The grand jury indicted Moore on two counts—one for sexual battery and one for exploitation of a child. *See* Miss. Code Ann. § 97-3-95(1)(c) (Rev. 2014) (criminalizing sexual penetration of someone at least fourteen years but less than sixteen years by someone more than thirty-six months older); Miss. Code Ann. § 97-5-33 (Rev. 2014) (criminalizing possession of photographs of a child under the age of eighteen years engaging in sexually explicit conduct). Moore pled not guilty.

4

### III. Trial and Conviction

¶10. Moore filed two pretrial motions—a motion to sever trial of the two counts and a motion to suppress the phone and photographs. Both were denied.

¶11. At trial, Sarah testified how Moore had sexually battered her that night. She also verified the eighteen photographs, which had been introduced into evidence, depicted her, Moore, and the events she had just described. The State also called the school officer, two officers with the Biloxi Police Department, and Sarah's boyfriend to testify.

¶12. Moore chose not to testify. But he did call his young niece—and Sarah's friend at the time—in an effort to attack Sarah's credibility.

¶13. The jury found Moore guilty on both counts. And the circuit judge sentenced him to two concurrent sentences of twenty years. Following an unsuccessful post-trial motion, Moore appealed.

### Discussion

¶14. Moore challenges the denial of his three motions—the motion to suppress; the motion for a directed verdict, which he renewed in his motion for a judgment notwithstanding the verdict; and the motion to try the sexual-battery count separately from the child-exploitation count. After review, we find all three motions were properly denied.

### I. Photographic Evidence

#### A. Cell-Phone Warrant Required

¶15. Moore's motion to suppress the phone and photographs challenged the

constitutionality of the initial search of the black LG TracFone.

¶16. The Fourth Amendment protects individuals against unjustified and improper intrusions. U.S. Const. amend. IV. *See Daniel v. State*, 536 So. 2d 1319, 1321-22 (Miss. 1988). And the United States Supreme Court has recently held that, as a general rule, to search through the personal data stored on one's cell phone without first obtaining a warrant is an unjustified and improper intrusion. *Riley v. California*, 134 S. Ct. 2473, 2490-95 (2014). This is because today's cell phones are so much more than just phones—they are "minicomputers that also happen to have the capacity to be used as a telephone." *Id.* at 2489. Not only do these "phones" store "in digital form many sensitive records previously found in the home," they "also contain[] a broad array of private information never found in a home in any form[.]" *Id.* at 2491. While this private information is "not immune from search," the Supreme Court held that a warrant must first be obtained before such a search may occur. *Id.* at 2493.

### B. Cell-Phone Warrant Obtained

¶17. In *Riley*, the cell-phone search had been a warrantless search incident to arrest.[4] But here, by contrast, the officers *did* obtain the required warrant.

¶18. Despite the valid search warrant, Moore insists his Fourth Amendment rights were

---

[4] In *Riley*, the Supreme Court held that the search-incident-to-arrest exception did not apply to the information on cell phones. But the Court was quick to point out that "other case-specific exceptions may still justify a warrantless search of a particular phone"—such as exigent circumstances. *Riley*, 134 S. Ct. at 2494.

6

violated. He claims the first warrant—the one to search his phone located in the Harrison County Jail—only authorized the investigator to retrieve the phone, not turn it on and search through the pictures. Consequently, he argues, the pictures were inadmissible "fruit of the poisonous tree."[5]

¶19. This court faced an analogous claim in *Magee v. State*, 73 So. 3d 1183, 1187-88 (¶¶15-19) (Miss. Ct. App. 2011). There, the defendant had been arrested for armed robbery. A similar nearby robbery had occurred weeks earlier, and in that case, police had recovered DNA evidence. *Id.* at 1186 (¶10). Suspecting Magee was connected with that robbery too, the investigating officer filled out a form search warrant similar to the one used for Moore's phone. This warrant identified the Poplarville jail as the place to be searched, "Jay Magee" as the person in control of that place, and "D.N.A. in any and all forms" as the items to be seized. *Id*. at 1188 (¶17). The officer then explained in his underlying facts how DNA had been recovered and how he hoped Magee's DNA would be a match. *Id.* Armed with this warrant, the officer went to the Poplarville jail and swabbed Magee's mouth for DNA evidence. His DNA matched a sample from the first robbery. *Id.* at 1186 (¶10).

¶20. Magee moved to suppress his DNA swab. He claimed the warrant only allowed for a search of his jail cell for DNA—not for the invasion of his body to take a DNA swab. *Id.*

---

[5] The "fruit of the poisonous tree" doctrine is an exclusionary rule that makes inadmissible tangible evidence obtained incident to an unlawful search or seizure. *Marshall v. State*, 584 So. 2d 437, 438 (Miss. 1991) (citing *Murray v. United States*, 487 U.S. 533, 536 (1988)); *Powell v. State*, 824 So. 2d 661, 667 (¶27) (Miss. Ct. App. 2002).

at 1188 (¶18). The circuit court rejected Magee's hyper-technical characterization of the warrant, and so did this court. Because it was evident from the affidavit supporting the search warrant that the warrant was sought to seize DNA evidence from Magee, we held the DNA swab was within the scope of the warrant. *Id.* at (¶¶18-19).

¶21. We find the same to be true here. The affidavit supporting the search warrant for Moore's phone was clear. The device was being sought because it contained photographic evidence of the sexual battery of Sarah. Thus, we find the warrant was specific enough to authorize not just the physical seizure of the device but also the search of the photo library on the device. *See id*. at (¶19).

### C. Good-Faith Exception

¶22. But even if the investigator's search through the photographs had somehow exceeded the scope of the warrant, that does not resolve whether the photographs should have been excluded. *Magee*, 73 So. 3d at 1189 (¶20). "The Fourth Amendment contains no provision expressly precluding the use of evidence obtained in violation of its commands." *Id.* (quoting *United States v. Leon*, 468 U.S. 897, 906 (1984)). The constitutional wrong is the unreasonable search itself. And the "exclusionary rule" is not designed to cure this wrong but instead to "safeguard[] the Fourth Amendment by deterring violations." *Id.* (citing *Leon*, 468 U.S. at 906).

¶23. Since the exclusionary rule is designed to deter police misconduct, this rule does not apply when the police did not knowingly engage in misconduct. *Id.* at (¶¶21-23). If a police

officer reasonably relied on a search warrant, which was later proven to be invalid, he acted in good faith. And the "good-faith exception" prevents the evidence found from being excluded. *Id.* (discussing the "good-faith exception" more in-depth and noting when it does not apply).

¶24. In most cases the "mere existence of a warrant" is enough to show the search was in good faith and that the exclusionary-rule exception should be applied. *Id.* at (¶24) (quoting *United States v. Hodge*, 246 F.3d 301, 308 (3d Cir. 2001)). Here, we find it clear from his affidavit that the investigator in this case sought a warrant to search the photographs on Moore's phone for evidence of the alleged sexual assault. And the investigator testified he believed he was acting under this warrant when he powered up the phone and searched its photo library. Because we find the investigator acted reasonably, we agree with the circuit judge that there was no reason to exclude the photographs found on the phone.

## II. Sufficiency of the Evidence

¶25. Moore's motion for a directed verdict, along with his post-trial motion for a judgment notwithstanding the verdict, challenged the sufficiency of the evidence. *See Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005).

¶26. Evidence is sufficient when—viewed in this light most favorable to the State—a rational trier of fact could have found the defendant guilty of each element of the crime. *Id.* Here, Moore was convicted of two crimes—sexual battery of a child and exploitation of a child—both of which were sufficiently supported by the evidence.

9

###### A.      Sexual Battery

¶27.    Under Mississippi Code Annotated section 97-3-95(1)(c), "A person is guilty of sexual battery if he or she engages in sexual penetration with . . . [a] child at least fourteen (14) but under sixteen (16) years of age, if the person is thirty-six (36) or more months older than the child[.]"  Lack of consent is not an element of this form of sexual battery.  *Palmer v. State*, 140 So. 3d 448, 452 (¶6) (Miss. Ct. App. 2014).  Instead, the essence of the crime of sexual battery of a child is sexual penetration, which can be proven by "slight penetration."  *Bateman v. State*, 125 So. 3d 616, 623 (¶¶18-19) (Miss. 2013).

¶28.    Here, it was undisputed that Sarah was fifteen years old at the time of the crime and Moore was three decades her senior.  Sarah testified Moore put his finger in her vagina and also directed her to put her mouth on his penis.[6]  While the uncorroborated testimony of the victim is sufficient to convict if it is not discredited or contradicted, *Parramore v. State*, 5 So. 3d 1074, 1077 (¶12) (Miss. 2009), Sarah's testimony *was* corroborated by the graphic photographs shown to the jury.[7]   Therefore, the evidence was sufficient to support each element of the crime of sexual battery of a fifteen-year-old child.

---

[6] Sexual penetration includes inserting any body part into another person's genitals and contact between one person's mouth and another's genitals. *Bateman v. State*, 125 So. 3d 616, 623 (¶18) (Miss. 2013); *Williams v. State*, 757 So. 2d 953, 956-57 (¶15) (Miss. 1999).

[7] To the extent Moore suggests the evidence was insufficient because there was no physical or DNA evidence, we reiterate that "the absence of physical evidence does not negate a conviction where there is testimonial evidence." *Williams v. State*, 879 So. 2d 1126, 1128 (¶5) (Miss. Ct. App. 2004) (quoting *Graham v. State*, 812 So. 2d 1150, 1153 (¶9) (Miss. Ct. App. 2002)).

## B.     Exploitation of a Child

¶29.     Under Mississippi Code Annotated section 97-5-33(5), "No person shall, by any means including computer, knowingly possess . . . any photograph . . . of an actual child engaging in sexually explicit conduct." For purposes of this crime, a "child" is "any individual who has not attained the age of eighteen (18) years." Miss. Code Ann. § 97-5-31(a) (Rev. 2014). When Moore was arrested on the unrelated charge, he was found in possession of the black LG TracFone. The investigator who seized the phone from Moore's property bag at the jail verified the phone contained sexually explicit photographs of Sarah—who at fifteen years old was, by definition, a child. And Sarah identified the phone as Moore's and the photographs on the phone as the ones Moore had taken of her as he was sexually assaulting her. This evidence is sufficient to support each element of the crime of exploitation of a child through possession of photographs of an actual child engaged in sexually explicit conduct.

## C.     Weight and Credibility Issues

¶30.     Delving into Moore's sufficiency-of-the-evidence argument on appeal, we discover it is really a disguised weight-and-credibility-of-the-evidence argument. On the sexual-battery count, Moore claims Sarah's testimony was not credible because, weeks before her sexual battery, Sarah had defended Moore when one of her friends—the same friend who testified on Moore's behalf—had accused Moore of rape. Moore also questions how no one else in the house that night could have witnessed the alleged rape. And on the exploitation

11

count, Moore suggests the prepaid black LG TracFone may not have been his, given how common that model was. Alternatively, he insists anyone who had access to his phone could have taken the pictures without his knowledge.

¶31.    But on appeal, Moore has not claimed the judge erred when she denied Moore's motion for a new trial, which challenged the weight of the evidence. *See Bush*, 895 So. 2d at 844 (¶18). Instead, Moore specifically suggests the trial judge erred when she denied his motion for a directed verdict—a claim that tests the sufficiency of the evidence. And when this court reviews the sufficiency of the evidence, we consider all evidence in the light most favorable to the State. *Davis v. State*, 130 So. 3d 1141, 1150 (¶37) (Miss. Ct. App. 2013) (citations omitted). We accept all "[c]redible evidence consistent with guilt" as true and "give the State the benefit of all favorable inferences reasonably drawn from the evidence." *Id.*

¶32.    Weight and credibility are matters for the jury to resolve. *Id.* And on appeal, we do not sift through conflicting evidence and weigh alternative theories like a juror. Rather, our only task is to decide if a reasonable juror could not possibly have found the defendant guilty based on the evidence presented. *Id.* We will only reverse "when reasonable and fair-minded jurors could only find the accused not guilty." *Id.*

¶33.    Simply put, Sarah's credibility was an issue for the jury, which was presented Moore's defense that Sarah was not to be trusted. The jury obviously decided to believe Sarah. And the jury also determined Moore had knowingly possessed the sexually explicit photos of

12

Sarah found on Moore's phone. Because a reasonable and fair-minded jury could have found Moore guilty beyond a reasonable doubt of both crimes, the trial judge did not abuse her discretion by denying Moore's motion for a directed verdict and his motion for a judgment notwithstanding the verdict.

### III. Trial of Both Counts

¶34. Finally, Moore claims the trial judge abused her discretion when she denied his motion to sever the sexual-battery count from the child-exploitation count. *See Rushing v. State*, 911 So. 2d 526, 532 (¶12) (Miss. 2005) (applying abuse-of-discretion standard to review of denial of motion to sever). But "Mississippi law allows for both multi-count indictments and multi-offense trials under certain circumstances." *Id.* at (¶13). And here those circumstances were clearly met.

¶35. Under both Mississippi Code Annotated section 99-7-2(1) (Rev. 2007) and Uniform Rule of Circuit and County Court 7.07(A), a criminal defendant may be charged with multiple offenses in the same indictment if "(a) the offenses are based on the same act or transaction; or (b) the offenses are based on two (2) or more acts or transactions connected together or constituting parts of a common scheme or plan." If the multi-count indictment is proper, "all such charges may be tried in a single proceeding." Miss. Code Ann. § 99-7-2(2); URCCC 7.07(B).

¶36. During the hearing on Moore's motion to sever, the State met its "burden to make out a prima facie case showing the offenses charged are within the language of the statute."

13

*Rushing*, 911 So. 2d at 533 (¶14) (citing *Corley v. State*, 584 So. 2d 769, 772 (Miss. 1991)). Both the sexual battery charge and the child-exploitation charge were based on the same act or transaction—Moore's sexual assault of Sarah, which he photographed. Miss. Code Ann. § 99-7-2(1); URCCC 7.07(A). We find all the judicial considerations laid out in *Corley* supported the State's position—the two offenses occurred at the same time; the evidence to prove one offense was admissible to prove the other; and the two offenses were interwoven. *See Corley*, 584 So. 2d at 772.

¶37. At this point, the burden shifted to Moore to "rebut the State's case by showing the 'offenses were separate and distinct acts or transactions.'" *Rushing*, 911 So. 2d at 533 (¶14) (quoting *Corley*, 584 So. 2d at 772). Moore made no such rebuttal. Instead, his defense counsel—without citing any legal authority in support—merely argued defending the case would be more difficult if the two counts were tried together. The judge disagreed.

¶38. Because Moore's sexual battery of Sarah and his possession of sexually explicit photos of Sarah intertwined in the same event, both the multi-count indictment and single trial were permissible. We therefore find the trial judge did not err when she denied Moore's motion to sever.

¶39. **THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, SEXUAL BATTERY, AND COUNT II, EXPLOITATION OF A CHILD, AND SENTENCE OF TWENTY YEARS IN COUNT I AND TWENTY YEARS IN COUNT II, BOTH IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH THE SENTENCES TO RUN CONCURRENTLY AND WITH CREDIT FOR TIME SERVED; TO PAY A $1,000 FINE IN COUNT I AND A $50,000 FINE IN COUNT II, WITH BOTH FINES SUSPENDED; TO PAY $1,000 TO THE MISSISSIPPI CHILDREN'S TRUST FUND;**

14

**AND TO REGISTER AS A SEX OFFENDER, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, FAIR AND JAMES, JJ., CONCUR.**